```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN MITCHELL, et al.            :      CIVIL ACTION
                                 :
            v.                   :
                                 :
SAFECO INSURANCE COMPANY         :
OF ILLINOIS                      :      NO. 14-625
```

MEMORANDUM

Bartle, J.                                              May 6, 2014

      Plaintiffs John Mitchell and Sarah Klunk filed this lawsuit in the Court of Common Pleas of Philadelphia County against their insurer, Safeco Insurance Company of Illinois, for breach of contract and for bad faith under 42 Pa. Cons. Stat. Ann. § 8371 for failure to pay what is allegedly due to them under their insurance policy as a result of fire, smoke and related damage to their home in Philadelphia on December 10, 2012.  Defendant timely removed the action to this court based on diversity of citizenship and an amount in controversy in excess of $75,000, exclusive of interest and costs.  See 28 U.S.C. § 1332(a).

      Plaintiffs have now moved to set aside an appraisal award on the ground that "during the course of the appraisal process" their appointed appraiser Richard Volpe "suffered some form of mental breakdown which rendered him incompetent to adequately advocate on [their] behalf ...."

The insurance policy in issue contains an appraisal provision which reads:

> 7. **Appraisal.** If you and we do not agree on the amount of the loss, including the amount of *actual cash value* or *replacement cost,* then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of you or the company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then resolve the issues surrounding the loss, appraise the loss, stating separately the *actual cash value* or *replacement cost* of each item, and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two of these three, when filed with the company shall determine the amount of loss.

(Ins. Policy, Sec. I - Property Conditions, ¶ 7)

The defendant insurer demanded an appraisal pursuant to the above provision of the policy. On June 19, 2013, the plaintiffs' appraiser Richard Volpe and the defendant's appraiser John McBrearty signed a Declaration of Appraisers and selected Lee Davis as the umpire "to settle matters of difference that shall exist between us, if any ..." Mr. Davis, however, never formally accepted the appointment as an umpire, and as it turned out his services were not needed.

On November 15, 2013, the appraisers, without the involvement of the umpire, agreed upon an award, which they both signed.  They determined that the "replacement cost loss" was $276,581.87, the "depreciation" was $31,843.85, and the "actual cash value" was therefore $244,738.02.  The award further contained the words "Deductible to be applied per policy provisions."

Judicial review of an appraisal award is severely limited.  In order to set aside an appraisal award, plaintiffs must clearly establish that they were "denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award." Boulevard Assocs. v. The Seltzer P'ship, 664 A.2d 983, 987 (Pa. Super. Ct. 1995) (quoting Gwin Eng'rs, Inc. v. Cricket Club Estates Dev. Grp., 555 A.2d 1328, 1329 (Pa. Super. Ct. 1989)). See also, 42 Pa. Cons. Stat. Ann. § 7341.  The court may also determine whether the appraisers have exceeded their authority. Boulevard Assocs., 664 A.2d at 987.

In their petition, as noted above, plaintiffs assert that Mr. Volpe "suffered some form of mental breakdown which rendered him incompetent to adequately advocate" on behalf of the plaintiffs.  Assuming that this is a proper basis to overturn an appraisal, plaintiffs introduced no evidence in this regard at the hearing held by the court on the petition.

At most, the evidence demonstrated that Mr. Volpe was somewhat dilatory and non-responsive to plaintiffs, their public

adjuster, and to the appraiser selected by the defendant. Nonetheless, he inspected the property in question and had three meetings with the defendant's appraiser John McBrearty.  It was agreed between Mr. Volpe and Mr. McBrearty that the latter would prepare the first draft of the appraisal and forward it to Mr. Volpe for his review and critique.  This is not an uncommon appraisal procedure.  Both appraisers do not always prepare their own initial appraisals.

At their third meeting, as a result of a suggestion by Mr. Volpe, the actual cash value of the loss was increased from $231,452.60, in Mr. McBrearty's submission, to $244,748.02.  It was this latter amount that was incorporated in the award Mr. Volpe and Mr. McBrearty signed on November 15, 2013.

In sum, there is no evidence that Mr. Volpe had a mental breakdown.  There is no evidence of fraud, misconduct, corruption or other irregularity in the appraisal process. Neither appraiser exceeded his authority.  Accordingly, the petition of plaintiffs to set aside the appraisal will be denied.